*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0015p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

PATRICIA DOWLING and CURTIS DOWLING,
        *Plaintiffs-Appellants,*

        *v.*

THE CLEVELAND CLINIC FOUNDATION, THE
CLEVELAND CLINIC, and CLEVELAND CLINIC
HEALTH SYSTEM,

        *Defendants-Appellees.*

No. 09-3159

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 07-02320—Donald C. Nugent, District Judge.

Argued: November 20, 2009

Decided and Filed: February 3, 2010

Before: MARTIN, BOGGS, and COLE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Harry D. Rankin, SUTTON RANKIN LAW, PLC, Edgewood, Kentucky, for
Appellants. Keith Hansbrough, BONEZZI, SWITZER, MURPHY, POLITO & HUPP CO.,
L.P.A., Cleveland, Ohio, for Appellees. **ON BRIEF:** Harry D. Rankin, SUTTON RANKIN
LAW, PLC, Edgewood, Kentucky, for Appellants. Bret C. Perry, James E. Stephenson,
BONEZZI, SWITZER, MURPHY, POLITO & HUPP CO., L.P.A., Cleveland, Ohio, for
Appellees.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Patricia Dowling slipped and fell in a
puddle of water while walking down a hallway adjacent to the cafeteria at the Cleveland
Clinic. Appellants Patricia and Curtis Dowling filed an action against appellees the
Cleveland Clinic Foundation, the Cleveland Clinic, and Cleveland Clinic Health System

(collectively, "the Clinic") in federal court on the basis of diversity jurisdiction. The Dowlings appeal the district court's grant of summary judgment for the Clinic. However, because the Dowlings did not proffer any evidence of how long the water hazard had existed before her fall such that an employee would have constructive notice, as required by Ohio slip-and-fall law, the district court did not err in granting the Clinic's motion for summary judgment. Additionally, the district court did not abuse its discretion in denying the Dowlings' motion for additional discovery because the Dowlings made no discovery requests until after the Clinic had completed its discovery and filed its motion for summary judgment, fifteen months after the Dowlings filed their suit in federal court, and did not complete their discovery during the sixty days offered by the court. For the reasons discussed below, we **AFFIRM** the judgment of the district court.

## I.

On April 27, 2004, the Dowlings arrived at the Clinic around lunchtime to consult with a physician. Mrs. Dowling testified that she slipped and fell in a puddle of water in a hallway between the lobby and the cafeteria. Mrs. Dowling stated that the activity in the hallway was busy and that people were rushing back and forth from the cafeteria carrying "pop and water and stuff." At her deposition, Mrs. Dowling stated that she fell because "[t]here was water in the hallway. It was just a fairly small puddle." During her deposition, Mrs. Dowling testified that she fell in a wide, tiled hallway and that there was nothing concealing her view of the hallway. She further stated that she had no knowledge where the water came from, how long the water had been in the hallway, whether anyone else had fallen in the spill, or whether anyone else was aware of the water in the hallway.

According to the deposition testimony of Katherine MacKenzie, the facility manager employed by Crothall, a health service contractor hired by the Clinic to oversee the Clinic's Environmental Services Department, MacKenzie was not aware of any prior reports of falls in the area in which Mrs. Dowling is alleged to have fallen. Additionally, she testified that the area was subject to constant monitoring by employees dedicated to that area. She acknowledged that the chances of a spill would be greater near the cafeteria around mealtimes because of increased activity and stated that a spill in the area at some point would be "inevitable."

The Dowlings filed a complaint on July 30, 2007 and an amended complaint on August 3, 2007, alleging that Mrs. Dowling suffered serious injuries as a result of the negligence and carelessness of the Cleveland Clinic Foundation, Cleveland Clinic, and Cleveland Clinic Health System.[1] The Dowlings claim that Mrs. Dowling's injuries resulted from the Clinic's negligence in allowing water to accumulate and/or remain on the floor of its premises, thereby creating an unreasonably dangerous condition.

After a scheduling conference in October 2007, the Clinic issued interrogatories and requests for production of documents and noticed the depositions of the Dowlings. After the completion of the Clinic's discovery requests in December 2007, the Clinic filed a motion for summary judgment. The Dowlings then responded to the substance of the motion for summary judgment before requesting additional time to file a sur-reply for the purpose of conducting additional discovery, which the district court granted on February 26, 2008, permitting the Dowlings to conduct discovery to respond to the motion for summary judgment until May 1.

The Dowlings' first "discovery request" during this litigation was an email sent in March 2008, three months after the Clinic's summary judgment motion, stating:

> Here are the answers to your interrogatories........ I am going to want to take the deposition of the Maintenance Supervisor and the Property Risk Manager of your client at the time of my client's fall some time in April since the Court has given me until May 1 to supplement my response to your MSJ......I also want to take the deposition of "Dorothy" who was at the information desk in the area where my client fell when she fell......I also would like copies of any maintenance manuals for the care, upkeep and supervision of your client's premises where my client fell......I also would like to know if the area where my client fell was subject to camera surveillance and whether any videotapes of my client's fall either exist now or ever existed....Please let me know if we can handle these discovery requests informally or if you want a formal set of

---

[1] The Dowlings had previously asserted these claims in a state court action filed in the Cuyahoga County Court of Common Pleas on April 25, 2006, Case No. CV-06-589999. This was filed within the applicable two-year statute of limitations after her April 27, 2004 slip-and-fall at the Clinic. The Dowlings voluntarily dismissed the state court action pursuant to Ohio Rule of Civil Procedure 41(A)(1)(a) on or about August 2, 2006, without conducting any discovery, because Mrs. Dowling continued to undergo treatment for her injuries. The action at issue here was filed within the one-year statute of limitations to re-file afforded by Ohio law. OHIO REV. CODE ANN. § 2305.19 (West).

> Interrogatories and Request for Production of Documents and/or Things......Please do not hesitate to contact me if you have any questions and/or want to discuss these or any other matter related to this case..... Thanks for all of your patience and professionalism throughout this case!!!!!!!

Though the Clinic responded that the persons would be identified and dates provided, no information was given. After several email exchanges, a deposition with MacKenzie, the Clinic's risk management manager, was scheduled for the afternoon of June 5. However, on the morning of June 5, having denied the Dowlings' motion for an extension of time to file a sur-reply on June 5, the district court granted the Clinic's motion for summary judgment. The district court found that, while the Clinic failed to prove that the condition causing Mrs. Dowling's fall was open and obvious, the Dowlings presented no evidence that the Clinic created, was aware of, or had constructive knowledge of the hazardous condition.

On June 16, the Dowlings moved to alter, amend and/or vacate the district court's grant of summary judgment because of various difficulties encountered during discovery and the fact that the Dowlings' counsel had relocated his law practice. The Dowlings requested additional time to conduct discovery in light of the circumstances which supposedly prevented their attorney from filing a more thorough response to the Clinic's motion for summary judgment.

On August 7, following a status conference, the district court, having found that the Dowlings did not have adequate time for discovery before it granted the Clinic's motion for summary judgment, granted the Dowlings' motion to alter, amend, and/or vacate the grant of summary judgment. The Dowlings were given sixty days to depose MacKenzie before the next status conference on October 8. The Dowlings sent several additional emails to the Clinic requesting a time to schedule the deposition. However, supposedly due to scheduling conflicts, the deposition was delayed until September 30.

On September 30, the Dowlings deposed MacKenzie—who had been identified in response to the Dowlings' request to depose the Clinic's facility manager—pursuant to a Notice of Deposition Duces Tecum dated September 17. However, they contend

that it was not until the day of the deposition that it became clear that MacKenzie worked for a third-party subcontractor and not the Clinic itself. Additionally, though the Notice of Deposition Duces Tecum requested that she bring:

> 1.      Any and all written policies and procedures to assure the safe condition of the floors at the Cleveland Clinic from foreign substances that create slip and fall hazards; and
> 2.      Any and all written policies and procedures applicable to when a reported slip and fall incident occurs at the Cleveland Clinic,

neither MacKenzie nor the Clinic's attorneys brought such documents with them to the deposition, though MacKenzie testified that they existed.

A status conference was held on October 8, at which time the district court was informed that the Dowlings had completed the requested deposition and had filed a second motion for extension of time to file a sur-reply to conduct additional discovery. The Clinic opposed the motion and filed a motion for an order reinstating the district court's previous summary judgment ruling. Another status conference was held on November 7, at which time the district court denied both motions. The district court ordered the parties to re-file motions for summary judgment and granted judgment in favor of the Clinic on January 12, 2009. The Dowlings timely appealed.

## II.

### A.      Grant of Summary Judgment

The Dowlings assert that the district court erred in finding that no genuine issue of material fact existed from which a reasonable juror could conclude that the Clinic had constructive knowledge of an accumulation of water which created a slip-and-fall hazard prior to Mrs. Dowling's injury.

We review a district court's grant of summary judgment *de novo*, and must view "the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the nonmoving party." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986)). Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting FED. R. CIV. P. 56).

As we noted in *Beard v. Kroger Co., Inc.*, 133 F. App'x 174, 175-75 (6th Cir. 2005), under Ohio law, a plaintiff may prevail in a slip-and-fall negligence claim in one of three ways. As an Ohio appellate court recently explained,

> The law in the state of Ohio is clear that in order for a plaintiff to recover damages from a slip and fall accident as a business invitee, the following must be established:
> 1. That the defendant through its officers or employees was responsible for the hazard complained of; or
> 2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or
> 3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.

*Combs v. First Nat'l Supermarkets, Inc.*, 663 N.E.2d 669, 670 (Ohio App.1995) (quoting *Johnson v. Wagner Provision Co.*, 49 N.E.2d 925, 928 (Ohio 1943)).

Under the third avenue for relief at issue here, generally referred to as a constructive knowledge theory of liability, Ohio courts "ha[ve] consistently followed *Anaple* [ *v. Standard Oil Co.*, 124 N.E.2d 128 (Ohio 1955),] and held that evidence of how long the hazard existed is mandatory in establishing a duty to exercise ordinary care." *Combs*, 663 N.E.2d at 671. In *Williams v. Anderson's, Inc.*, No. L-00-1365, 2001 WL 574958 (Ohio Ct. App. May 25, 2001), the court applied this principle in rejecting the negligence claim of a woman who had slipped and fallen on an orange peel. "To show constructive knowledge," the court stated at the outset, "the invitee must present evidence to show how long the hazard existed." *Id.* at *1. But "[n]otably", the court added, "appellant did not present any evidence tending to show that any of appellee's employees saw the orange peel on the floor before appellant fell," and "she did not

present evidence showing the amount of time that the hazard existed before the fall." *Id.* at \*2. Thus, the court dismissed her claim.

*Harrison v. Andersons, Inc.*, No. L-99-1368, 2000 WL 819057 (Ohio Ct. App. June 23, 2000), hews to the same path. The court granted summary judgment even though an employee saw the hazard on the floor. "Assuming, as we must for summary judgment purposes, that this employee did notice the [hazard] prior to appellant's slip, there is simply no evidence regarding how long that employee knew of the grapes prior to appellant's accident." *Id.* at \*2.

In this case, as the district court noted in its memorandum opinion granting summary judgment,

> Mrs. Dowling testified that she possesses no knowledge, or evidence, as to the cause of the accumulation of water; whether any employee of defendants was aware of the accumulation of water; how long the water had been in the hallway; or that any other individual fell in the hallway so as to put defendants on notice of the condition. While Ms. MacKenzie testified that the area where Mrs. Dowling fell was subject to constant monitoring, and that it was foreseeable that someone would spill liquid in the area because of its location near the cafeteria, she also testified that she has no knowledge of actual prior spills or falls in the area where Mrs. Dowling fell. There is simply no evidence that [the Clinic] had any knowledge of the alleged hazard and no evidence upon which to impute knowledge to [the Clinic].

In so doing, the district court properly applied the requirements of Ohio law for slip-and-fall tort suits that rely upon constructive knowledge to establish negligence.

The Dowlings claim that the district court erred in relying upon MacKenzie's testimony that the area is constantly monitored, arguing that just because it is supposed to be constantly monitored does not mean that it is. However, the Dowlings present no evidence from which to infer that the area was not monitored constantly and that the water had been present for long enough for the Clinic to have had constructive knowledge of its existence.

Thus, because the district court properly applied the requirements of Ohio law for slip-and-fall tort suits that rely upon constructive knowledge to establish negligence, the district court did not err in granting summary judgment for the Clinic.

**B.       Denial of the Dowlings' Motion to Allow Additional Discovery**

The Dowlings further argue that the district court abused its discretion in denying their motion to allow additional discovery.

We review a district court's denial of additional time for discovery for abuse of discretion. *Audi AG v. D'Amato*, 469 F.3d 534, 541 (6th Cir. 2006) (citing *Plott v. General Motors Corp.*, 71 F.3d 1190, 1197 (6th Cir. 1995)). Factors that should be considered include: (1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to prior discovery requests. *Id.* The overarching inquiry in these overlapping factors is whether the moving party was diligent in pursuing discovery.

**1.       When the Dowlings Learned of the Issue**

The Dowlings assert that they continue to require discovery related to the policies and procedures for the cleaning and maintenance of the area in which Mrs. Dowling slipped and fell. In response to their requests for a deposition with the Clinic's "Maintenance Supervisor and the Property Risk manager," the Clinic arranged a deposition with MacKenzie. The Dowlings contend that they learned at the deposition that MacKenzie worked for a third-party subcontractor and not the Clinic itself and that she was allegedly not the correct party to depose because she was not in charge of the area in which Mrs. Dowling fell at the time that she fell. However, it is not clear that this is a real issue. MacKenzie was employed by the Clinic as the Facility Services Director with the Department of Environmental Services, a department that provides housekeeping and maintenance, which includes addressing spilled liquids. It is a fact

in dispute as to whether MacKenzie was responsible for the area in which Mrs. Dowling fell. However, the Dowlings never issued an interrogatory seeking the identity of the person responsible for that area. Instead, their attorney repeatedly sent exclamation-point-laden emails. Furthermore, had the Dowlings filed a formal request for a deposition of MacKenzie earlier in the case, either when the Clinic was performing its discovery or after the court granted them additional time to file the sur-reply, when the Clinic had informed them that they would respond only to formal discovery requests, they could have learned all she had to testify about before the deadline. Had they done so, they also would have had a record to point to in order to establish diligence in seeking discovery. There is no reason that the Dowlings could not have learned of this potential discrepancy earlier in the case.

The Dowlings also assert that it was an abuse of discretion for the district court to deny their request for additional time to acquire the documents that the Clinic and MacKenzie did not bring to the deposition, despite testimony that the documents exist. They claim that the documents may contain information inconsistent with the Clinic's defenses and demonstrate that the Clinic failed to take reasonable measures to ensure the safety of its premises. However, it is unclear why this information could not have been requested in an earlier request for written discovery; indeed, the Dowlings first asked for the "maintenance manuals" via email several months earlier before the Clinic informed them that it would only respond to formal discovery requests. Thus, the Dowlings did not first learn of this information on the day of the deposition and could have obtained it earlier had they been more diligent.

Additionally, the Dowlings were only granted the additional sixty days to take the deposition of the "Clinic's Risk Management Director," not to acquire documents. Moreover, requests for production of documents accompanying a notice of deposition to a party deponent must be sent at least 30 days before the deposition to permit objections to the document request. Here, the request was made less than three weeks before the deposition. *See* FED. R. CIV. P. 30(b)(2); FED. R. CIV. P. 34(b)(2). Thus, the Dowlings' arguments that the Clinic failed to object to the request are unavailing.

### 2.      How the Discovery Would Affect the Ruling Below

The Dowlings assert that, if permitted to conduct additional discovery, they would depose Tony Cummings, the individual that they claim was on duty on the day Mrs. Dowling fell and may discover that the Clinic had not adequately protected the premises. Further, they assert that they would request the written materials described above. However, they have not shown that this testimony and the written materials would affect the district court ruling, merely that they may contain relevant information.

### 3.      The Length of the Discovery Periods

In this case, the Dowlings did not file their motion for additional time for discovery until fifteen months after they filed their lawsuit in the district court on July 30, 2007.[2] At no time during the pendency of the lawsuit did the Dowlings request written discovery from the Clinic nor did they move for an extension of time to conduct discovery for the purpose of opposing the motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(f). The Dowlings' first "discovery request" was an email sent in March 2008—three months after the Clinic's motion for summary judgment was filed and after the Dowlings had responded to the summary judgment motion—vaguely and informally requesting two depositions, "any maintenance manuals" for the care of the floor, and any videotapes of the fall. After granting the Clinic's motion for summary judgment on the day that the MacKenzie deposition was scheduled, the district court granted the Dowlings' motion to alter, amend, and/or vacate the grant of summary judgment because the Dowlings had not had sufficient time to conduct the deposition. Given sixty days to conduct the additional discovery, the Dowlings' counsel again relied on informal emails to schedule the deposition. Due to alleged scheduling conflicts, the deposition was delayed until September 30. Though

---

[2]The Clinic suggests that we should consider the original state court filing as well. The state court filing was made on April 25, 2006. The Dowlings conducted no discovery before voluntarily dismissing the case on or about August 2, 2006 because Mrs. Dowling was continuing to undergo treatment for her injuries. We need not consider this three-month period during which discovery could have taken place because there was sufficient time to conduct discovery when considering only the federal claims. However, it should be noted that discovery could not have been taken between the pendency of the state and federal claims, as the Clinic seems to suggest, because no litigation was then pending.

the Dowlings issued a Notice of Deposition Duces Tecum dated September 17, the requested documents were not brought. The Dowlings still did not file a Rule 56(f) motion for an extension to conduct additional discovery, instead filing a motion for an extension of time to conduct additional discovery on October 7.

Thus, the Dowlings had a substantial amount of time to conduct discovery, including the additional sixty days granted by the court after it vacated the grant of summary judgment.

### 4.     Whether the Dowlings' Counsel was Dilatory

The Dowlings assert that their counsel was not dilatory in seeking discovery. However, as noted above, the Dowlings did not conduct discovery for substantial periods of time and then only through very informal and vague emails. In response to the first email, the Clinic informed the Dowlings that formal discovery requests would be required, including interrogatories and requests for production of documents, but they were never filed. While the Dowlings' counsel should be applauded for beginning discovery requests informally, he was dilatory in failing to make formal discovery requests when informal requests proved unavailing.

### 5.     Whether the Clinic was Responsive in Prior Discovery Requests

The Dowlings assert that the Clinic engaged in conduct that appears to have been intended to interfere with the Dowlings' ability to discover relevant evidence and they appear to be correct. It appears that the Clinic delayed providing available dates and deflected informal discovery attempts. The Clinic can hardly be lauded for its discovery tactics. Its decision to delay and slow the process is unfortunate, but the Clinic does appear to have complied with prior formal discovery requests. In short, it does not appear that the additional time for discovery requested would have a substantial effect on the outcome of the case. The Dowlings had substantial time to conduct discovery and, while the Clinic was not responsive as to informal discovery requests, the Dowlings

have the burden of making appropriate formal requests when informal requests are unavailing.

Thus, the district court did not abuse its discretion in denying the Dowlings' motion for additional time to conduct discovery.

## III.

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment for the Clinic and **AFFIRM** the district court's denial of the Dowlings' motion for additional time to conduct discovery.