NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 18a0024n.06

Case No. 17-3434

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Jan 12, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ESTATE OF JUAN CARLOS ANDRADE RODRIGUEZ, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant-Appellee. | ) ) ) | |

BEFORE: COLE, Chief Judge; SILER and COOK, Circuit Judges.

**SILER**, Circuit Judge. For more than ten months, Juan Carlos Andrade Rodriguez was held in the United States' custody at a private prison in Ohio. During his incarceration, Rodriguez, who suffered from type-one diabetes, experienced a severe decline in his health. Three years after his removal to Mexico, Rodriguez died. His estate brought suit against the United States, alleging the inadequate medical care he received while incarcerated caused his illnesses and eventual death. During discovery, the estate failed to timely produce a medical expert report, and the district court denied its motion for extra time to do so. The district court then granted the United States' motion for summary judgment because the estate lacked expert testimony to support its claims. The estate appeals the district court's denial of its motion for an

extension of time, grant of summary judgment in the government's favor, and denial of the estate's motion to reconsider. We AFFIRM.

I.

Rodriguez was arrested and federally indicted for conspiring to possess marijuana with the intent to distribute in 2010. From February 2010 to January 2011, Rodriguez was incarcerated at the Northeast Ohio Correctional Center (NEOCC), a private prison owned and operated by the Corrections Corporation of America (CCA). Rodriguez's estate alleges that the United States, through CCA, provided him with inadequate medical care for his diabetes during his incarceration.

Shortly after his arrest, Rodriguez's health started to decline, beginning with vision problems in March 2010. He was found unresponsive in his cell on eight occasions and hospitalized five times, all due to low blood sugar levels. His counsel made several motions related to his need for medical care. Eventually, the district court sentenced Rodriguez to twelve months and one day of incarceration. He was removed to Mexico in January 2011. By that time, the estate says, Rodriguez was suffering from blindness, kidney failure, and other serious ailments.

Rodriguez died in Mexico in 2014. The estate attributes Rodriguez's illnesses and death to the government's negligent failure to ensure he received proper treatment while in its custody. The United States denies liability, saying Rodriguez's diabetes was out of control before his arrest, and he regularly refused medical treatment while incarcerated at NEOCC.

Prior to his death, Rodriguez filed this suit against the United States. He brought claims arising under the Federal Tort Claims Act (FTCA), the Eighth and Fourteenth Amendments, the Americans with Disabilities Act, and the Rehabilitation Act. The United States moved to

dismiss, arguing that it could not be held liable for the actions of its independent contractor, CCA. The district court dismissed most of Rodriguez's claims but allowed his FTCA claim to proceed. Following Rodriguez's death, the court substituted his estate as the named plaintiff. The estate then filed an amended complaint, adding an FTCA wrongful death claim. The United States impleaded CCA as a third-party defendant.

The district court issued a scheduling order in February 2016. It set August 1 as the deadline for completing fact discovery, November 18 as the deadline for completing all discovery, and December 19 as the deadline for dispositive and *Daubert* motions. The order required the estate to disclose any expert witness reports no later than eight weeks before the end of discovery, and the government to disclose its expert reports no later than four weeks before the end of discovery. It cautioned that "[in] the event that a [Rule] 26(a)(2)(B) report . . . is not provided as required herein, the proposed expert testimony may be excluded." The order also specified that "[e]xtensions of court-supervised discovery are not ordinarily granted in the absence of unusual circumstances. Although unsupervised discovery is sometimes agreed to among counsel, court deadlines are not changed based upon mere agreement."

On July 12, the United States moved, unopposed, for an extension of time to complete discovery. The district court granted that motion, extending the fact discovery deadline to September 1 and the deadline for all discovery to December 1. On September 8, again at the government's request, the court extended the fact discovery deadline to October 1, but left the discovery completion deadline intact. Pursuant to the original scheduling order, then, the estate had until October 6—eight weeks before December 1—to disclose its expert report. The October 6 deadline passed with no disclosures by the estate.

On October 20, the estate's counsel emailed the government's counsel, asking if the United States would oppose a forty-five day extension of the expert disclosure deadline so the estate's expert, Dr. Jorge Calles-Escandon, could complete his report. The government's counsel replied the following day, stating she had no objection.

Eight weeks later, on December 16, the estate filed its first motion for an extension of time. It asked to be allowed to disclose its expert report no later than January 10, 2017, ninety days before the April 10, 2017 trial. The United States opposed this motion, arguing that the estate had run afoul of the court's February 2016 scheduling order and had not shown good cause for an extension. The district court agreed and denied the estate's motion to extend the expert deadline. The court then granted summary judgment in the United States' favor because the estate failed to produce admissible expert testimony establishing the standard of care and proximate causation, as was necessary for the estate to prevail on its FTCA claims.

After the court granted the United States' summary judgment motion, the estate filed Dr. Calles-Escandon's expert report in the record and moved for reconsideration. The district court denied the estate's motion and entered judgment for the government.

II.

A.

The estate first challenges the district court's denial of its motion for an extension of time to disclose Dr. Calles-Escandon's report. A party must disclose the written reports of its experts "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). We consider five factors when deciding whether the district court abused its discretion by denying additional time to complete discovery: "(1) when the moving party learned

of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to prior discovery requests." *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010) (citation omitted). "The overarching inquiry . . . is whether the moving party was diligent in pursuing discovery." *Id.*

The *Dowling* factors weigh strongly in the United States' favor. From the outset of this case in 2013, the estate knew or should have known it would need expert evidence to support its medical negligence claims, and it had nearly eight months from the district court's February 2016 scheduling order to submit an expert report. Even after the estate recognized it needed more time to complete expert discovery, it waited eight weeks to file a motion for an extension. The record does not indicate that the United States was unresponsive to the estate's prior discovery requests.

Only one factor weighs in the estate's favor. As explained below, the district court correctly held that the estate's lack of medical evidence was fatal to its claims. If Dr. Calles-Escandon's report had been timely submitted, the outcome at the summary judgment stage may very well have been different. Still, the estate fails to explain why this single factor outweighs all the others, especially given that the delay in obtaining the expert report appears solely attributable to the estate.

Further, none of the estate's proffered reasons for missing the expert disclosure deadline amount to good cause. The estate first argues that, "based upon the oral pretrial with the district court, . . . parties were to resolve discovery and deadline disputes among themselves, without disrupting the Court." This argument is belied by the plain language of the scheduling order, which makes clear that "court deadlines are not changed based upon mere agreement."

The estate next argues that the district court should have granted its motion because counsel for the United States agreed to the extension. The United States agreed to a forty-five-day extension that would have given the estate until November 21 to disclose Dr. Calles-Escandon's report, leaving the United States nearly a month to prepare summary judgment and *Daubert* motions. But the estate instead waited until December 16, three days before the dispositive and *Daubert* motion deadlines, to ask for a ninety-six-day extension until January 10, 2017. The United States never agreed to this extension, and understandably so. Had the district court granted the estate's request, the United States would have had to depose Dr. Calles-Escandon and significantly rewrite its summary judgment motion. The government's acquiescence to a shorter, earlier extension did not require the district court to grant the estate's motion for a longer, later extension.

The estate also leans on the fact that the district court twice granted the United States' motions to extend discovery deadlines. But the government's motions are readily distinguishable from the estate's motion, because they were unopposed and filed before the deadline they sought to extend passed.

Neither does Rule 26 provide the estate with any relief. In the absence of a court order, parties must disclose expert reports at least ninety days before trial. Fed. R. Civ. P. 26(a)(2)(D). The estate's proposed deadline, January 10, 2017, was indeed ninety days before the trial. But the ninety-day requirement in Rule 26(a)(2)(D) applies only when there is no contrary order in place. Here, it is undisputed that the estate was required, per the district court's scheduling order, to disclose its expert report by October 6.

Last, the estate argues it established good cause for an extension because Dr. Calles-Escandon experienced a death in his immediate family that required him to return to Mexico in

December 2016, while he was completing his report. Although this is certainly an unfortunate situation, it does not excuse the estate's failure to either have his report completed by October 6 or move for an extension prior to that date. Had the estate abided by the timeline for discovery as set by the district court, the report would have been completed well before December.

By waiting until the expert disclosure deadline passed to move for an extension, the estate acted in a dilatory fashion. And when it did file a motion, it lacked good cause for an extension. The district court therefore did not abuse its discretion by denying the estate's motion for additional time. *See Bentkowski v. Scene Magazine*, 637 F.3d 689, 696-97 (6th Cir. 2011) (upholding district court's denial of extension when plaintiff filed motion on the evening of the discovery deadline, "made no effort to conduct discovery in the four and a half months allotted for non-expert discovery and offered no explanation for his lack of diligence").

B.

The next question is whether the district court erred by granting the United States' motion for summary judgment based upon the estate's lack of expert evidence. We review a district court's grant of summary judgment de novo, "construing the evidence and drawing all reasonable inferences in favor of the nonmoving party." *Rocheleau v. Elder Living Constr., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (citation omitted).

The estate asserted two FTCA claims against the United States for medical negligence and wrongful death. Under the FTCA, "[t]he extent of governmental tort liability is determined in accordance with the law of the state where the event giving rise to liability occurred." *Milligan v. United States*, 760 F.3d 686, 692 (6th Cir. 2012) (citation and internal quotation marks omitted); *see* 28 U.S.C. § 1346(b)(1). In medical malpractice cases, Ohio law requires expert testimony to establish the applicable standard of care and proximate causation. *Roberts v.*

*Ohio Permanente Med. Group, Inc.*, 668 N.E.2d 480, 485 (Ohio 1996); *Bruni v. Tatsumi*, 346 N.E.2d 673, 677 (Ohio 1976)). The expert testimony requirement extends to wrongful death cases premised upon medical negligence. *See Ramage v. Cent. Ohio Emergency Serv., Inc.*, 529 N.E.2d 828, 833 (Ohio 1992).

The estate does not dispute that Ohio law requires expert evidence to prevail on both claims. Instead, the estate says Dr. Calles-Escandon's report, submitted after the district court issued its summary judgment opinion, both establishes a standard of care and presents a triable issue of fact on proximate causation. While that may be the case, it does not excuse the estate's failure to submit the report in a form that the district court could have considered at the summary judgment stage.

A "party opposing summary judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (emphasis removed). The district court acted within its discretion when it denied the estate's motion for additional time to disclose Dr. Calles-Escandon's report. This decision had the practical effect of excluding the report and preventing the estate from providing expert evidence in a form that would be admissible at trial. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). The district court did not

err in refusing to consider Dr. Calles-Escandon's report, especially given that the report was not in the record when the United States' summary judgment motion became ripe for a decision.[1]

Without any expert testimony, the estate lacked proof of the applicable standard of care and proximate causation, two essential elements of its claims under Ohio law. *Roberts*, 668 N.E.3d at 485; *Bruni*, 346 N.E.2d at 677. The district court did not err by granting summary judgment to the United States on this basis. *See Borg v. Chase Manhattan Bank USA, N.A.*, 247 F. App'x 627, 637 (6th Cir. 2007) (upholding district court's grant of summary judgment to defendant when plaintiff's only expert testimony regarding standard of care was properly excluded as untimely).

## C.

The final issue is whether the district court erred by denying the estate's motion to reconsider. "Motions to alter or amend judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Intern. Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted). "A district court's refusal to consider evidence produced for the first time on a motion to reconsider will be reversed only if the refusal constitutes an abuse of discretion." *Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (citations omitted).

---

[1] In passing, the estate also suggests that a two-page letter from Dr. Mark B. Shoag, submitted alongside its amended complaint, constitutes an expert report. The district court correctly held that the letter, which briefly explains that Rodriguez's medical treatment while incarcerated was inadequate for a person with type-one diabetes, does not conform to the strictures of Rule 26(a)(2)(B). Namely, the letter fails to adequately detail the facts and data considered by Dr. Shoag, any exhibits he plans to use to support his opinions, his qualifications, his previous work as an expert witness, or his compensation. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii)-(vi).

The estate argues that Dr. Calles-Escandon's report, filed after the district court issued its summary judgment opinion, was new evidence that should have caused the district court to reconsider its earlier rulings. But "[t]o constitute 'newly discovered evidence,' the evidence must have been previously unavailable." *GenCorp, Inc.*, 178 F.3d at 834. Here, the estate has "provided no reason why [Dr. Calles-Escandon's] opinion . . . could not have been produced earlier." *Sommer*, 317 F.3d at 691. The district court acted within its discretion by denying the estate's motion for an extension, and it correctly held that under Ohio law, the estate's claims could not survive without expert testimony. It was not obligated to revisit those decisions simply because the estate tendered an expert report more than six months after the deadline for that report passed.

**AFFIRMED**.