NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0140n.06

Case No. 22-3636

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 22, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| BRIAN FABINIAK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| WAL-MART STORES EAST, LP, originally | ) | OHIO |
| named as Wal-Mart Associates, Inc., | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

Before: BATCHELDER, GRIFFIN, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Brian Fabiniak managed a Wal-Mart store in Madison, Ohio. During his tenure, he received numerous warnings that the store was not up to corporate cleanliness standards. When further inspections revealed even more unsatisfactory conditions, Fabiniak was fired. Fabiniak, however, attributed his termination to age discrimination, not violations of company policy. We agree with the district court that Fabiniak has not established a genuine issue of material fact that Wal-Mart's termination decision was pretext for age-based animus. We also affirm the district court's refusal to extend the discovery deadline.

**I.**

A.  Following more than a decade of service, Brian Fabiniak, age 46, was terminated as a Wal-Mart store manager.  His troubles trace back to a store tour conducted by Kelene Mavar, a Wal-Mart Market Human Resources Manager.  Following the inspection, Mavar told Fabiniak that his store was "sub-standard" when it came to cleanliness.

Fabiniak attributed the issue in part to staffing challenges.  At the time, Fabiniak was overseeing nearly 400 employees, with a weekly payroll of almost 10,000 workhours.  Wal-Mart's staffing system requires that every store be allotted enough payroll hours to be fully staffed.  Fabiniak's manager, Edward Gregorek, could, at his discretion, direct additional hours to the stores he oversaw.  But Gregorek did not allocate extra hours to Fabiniak's store.

Gregorek inspected Fabiniak's store several more times.  Based on those inspections, Gregorek told Fabiniak that the store was sub-standard.  Mavar toured the store again a few weeks after having warned Fabiniak about his store's condition, only to find parts of the store still "filthy."  Because Fabiniak's performance had not improved after the earlier warning, he received a "Red" Disciplinary Action under Wal-Mart's discipline protocol.

To better understand the significance of that warning, we note that Wal-Mart's employee discipline policy contains three levels.  "Yellow" reflects a low-level discipline, "Orange" is the intermediate level, and "Red" is the highest.  As a general matter, the steps proceed sequentially.  Wal-Mart supervisors, however, may skip steps in the case of a "serious" infraction.  Likewise, it is "common practice" to skip steps between discipline levels in situations where the employee has been warned "multiple" times to change his behavior.

Earlier that year, Fabiniak was charged with a "Yellow" level discipline for failing to enter the management schedule into Wal-Mart's internal systems, despite "multiple requests" to do so.

2

So when he received his "Red" discipline, Fabiniak was put on a performance improvement plan. The plan required Fabiniak to show "immediate and continuous improvement" in several cleanliness-related areas over the next two weeks.

Two weeks came and went. Wal-Mart officials returned to tour the store once again. Following the tour, Fabiniak was told there were still unclean areas. Another two weeks later, Mavar and Gregorek again inspected the store, only to find it sub-standard, including in places Mavar believed she had pointed out a month earlier.

At that point, Fabiniak was terminated. During his termination meeting, Fabiniak admitted his store still failed to meet Wal-Mart cleanliness standards. Fabiniak's replacement was 20 years younger.

B. Fabiniak sued Wal-Mart in state court, invoking Ohio's anti-discrimination statute, Ohio Rev. Code Ann. § 4112.02(A). His complaint alleged that Wal-Mart's actions were motivated by discriminatory age-based animus. Wal-Mart removed the action to federal court based on diversity jurisdiction.

After the close of discovery, Fabiniak asked the district court to allow him to engage in additional discovery. He purported to need more time to request information related to other stores overseen by Gregorek. The district court denied the motion.

Following discovery, Wal-Mart moved for summary judgment, which the district court granted. Fabiniak timely appealed that decision as well as the denial of his motion to reopen discovery.

## II.

A. Before turning to the district court's summary judgment decision, we begin with a threshold procedural matter. Fabiniak claims that the district court improperly foreclosed

additional discovery. Specifically, he contends that he was entitled to more time to pursue information related to other stores overseen by Gregorek. Claims of that variety turn on the consideration of five factors: (1) when Fabiniak learned of the issue; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether Fabiniak was dilatory; and (5) whether Wal-Mart was responsive to discovery requests. *Bentkowski v. Scene Mag.*, 637 F.3d 689, 696 (6th Cir. 2011) (citing *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010)). Put more simply, "[t]he overarching inquiry in these overlapping factors is whether the moving party was diligent in pursuing discovery." *Id.* We review the district court's denial of Fabiniak's request for an abuse of discretion. *Id.*

Fabiniak's claim for an extension arguably has some merit. At less than five months, the discovery period could be seen as relatively short. And during that discovery window, Fabiniak granted deadline extensions to Wal-Mart, a favor which was not returned. That series of events may well have left Fabiniak in a difficult place as he developed his claims. These issues, however, are a paradigmatic example of matters that are to be addressed on a case-by-case basis. And we afford district courts considerable discretion in doing so. *Id.* On balance, we do not see an abuse of discretion by the district court in concluding that Fabiniak "could, and should," have asked for the needed information months earlier. After all, as reflected by his complaint, Fabiniak knew of the purported significance of this information at the beginning of this lawsuit. *See Dowling*, 593 F.3d at 478–79 (affirming the denial of a discovery extension when the party "could have obtained [the information] earlier had they been more diligent"). Even if Fabiniak did not know about this information, he has not shown us what information he would have expected to receive that would change the outcome of this case. For these reasons, we need not upend the district court's handling of the discovery process.

4

B.  Turning now to summary judgment.  Wal-Mart was entitled to summary judgment if, after drawing all reasonable inferences in Fabiniak's favor, there was no genuine dispute as to any material fact, and Wal-Mart prevailed as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986).  We review the grant of summary judgment de novo. *M.J. ex rel. S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 445 (6th Cir. 2021).

Generally speaking, Ohio law prohibits employers from discharging employees "because of" age.  Ohio Rev. Code Ann. § 4112.02(A).  Age discrimination claims brought under § 4112.02(A) "are 'analyzed under the same standards as federal claims brought under'" the Age Discrimination in Employment Act.  *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (citation omitted).

As Fabiniak relies on circumstantial evidence, his claims are examined under the *McDonnell Douglas* burden-shifting framework.  *Id.*  If Fabiniak "successfully makes out a prima facie case, then the burden shifts to [Wal-Mart] to offer a 'legitimate, nondiscriminatory' reason for its actions."  *Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 510 (6th Cir. 2022) (citation omitted).  If Wal-Mart does so, "then the burden of production shifts back to [Fabiniak] to demonstrate that the proffered reason is a pretext."  *Blizzard*, 698 F.3d at 283 (quoting *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003)).

With the parties in agreement that the first two steps have been satisfied, we can move directly to the final step—pretext.  To demonstrate pretext, Fabiniak must put forward evidence that Wal-Mart "made up its stated reason to conceal intentional discrimination."  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009).  Traditional ways of doing so include showing that Wal-Mart's proffered reason for Fabiniak's termination: (1) has no basis in fact; (2) did not actually motivate his termination; or (3) is insufficient to explain the company's action.  *Miles v.*

*S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020). "[T]hese three categories are simply a convenient way of marshaling evidence and focusing it on the ultimate inquiry: 'did the employer fire the employee for the stated reason or not?'" *Id.* (quoting *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012)) (cleaned up).

1. Fabiniak begins by arguing that his termination was not "actually motivated" by Wal-Mart's stated reasons. To validate his claim, Fabiniak must "present evidence 'which tend[s] to prove that an illegal motivation was *more* likely than that offered by the defendant.'" *Brennan v. Tractor Supply Co.*, 237 F. App'x 9, 20 (6th Cir. 2007) (citation omitted). That evidence, Fabiniak claims, is that Wal-Mart skipped a step in its discipline process, meaning cleanliness issues did not in fact trigger his discharge. As Fabiniak sees things, evidence that Wal-Mart departed from its own disciplinary processes is tantamount to evidence of pretext. And, Fabiniak emphasizes, he received a "Red" rather than an "Orange" level Disciplinary Action for maintaining a sub-standard store. Add in the fact that Gregorek did not use his discretion to increase the number of shift hours available to Fabiniak, and the pretextual nature of Wal-Mart's justification for his termination becomes plain, says Fabiniak.

The record demonstrates that Wal-Mart had a basis to fire Fabiniak. Critical to the analysis here is "whether the employer made a reasonably informed and considered decision before taking the complained-of action." *Tingle*, 692 F.3d at 531 (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598–99 (6th Cir. 2007)) (quotation marks omitted). That turns our attention "to the nature of [Wal-Mart's] investigation and disciplinary decision process." *Id.* at 531. If that process was reasonably informed and well considered, it is not our job to second guess the company's business judgment. *Id.* at 530. Fabiniak had multiple warnings and thousands of employee-hours to bring his store into compliance, yet he did not. After several inspections, the

store was still "filthy," a fact not lost on Fabiniak. At the time of his termination, after all, Fabiniak agreed that the store did not meet cleanliness standards.

Even if Wal-Mart skipped a step in the disciplinary process, we see no evidentiary basis undermining the company's honest assessment of Fabiniak's faults, leading to his termination. As a starting point, even if Wal-Mart violated its own policy, "an employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext." *Miles*, 946 F.3d at 896 (citation omitted). Nor, in any event, would skipping a step even be a departure from company policy. Wal-Mart managers retain the discretion to jump steps for serious violations. Step-skipping, in fact, was typical in cases where an employee had previously been warned multiple times. If anything, the discretionary jump to "Red" should have alerted Fabiniak to Wal-Mart's commitment to maintaining clean stores. On top of that, Fabiniak had multiple warnings to bring his store into compliance. Those warnings included his performance improvement plan, which offered detailed steps on how he could improve his managerial deficiencies. That Fabiniak chose to disregard this array of warnings is not "in any way related to [his] age or in any way reflect[ive of] age animus." *Brennan*, 237 F. App'x at 21. Instead, it reflects Fabiniak's continued disagreement with company practices and policies, a "disagreement [that] is insufficient to show pretext." *Papierz v. Benteler Auto. Corp.*, No. 21-1237, 2022 WL 154342, at *2 (6th Cir. Jan. 18, 2022). All things considered, we see no reason to doubt Wal-Mart's assessment that Fabiniak "exhibited numerous performance issues and failed to avail himself of multiple opportunities to improve prior to termination." And more broadly, Fabiniak has not put forward evidence that creates a genuine issue of material fact that Wal-Mart "made up its stated reason to conceal intentional discrimination." *Chen*, 580 F.3d at 400 n.4.

2. Fabiniak also believes his cleanliness violations were a pretextual basis for his termination because a similarly situated manager at the nearby Eastlake Wal-Mart was not terminated for managing a dirty store. But Fabiniak's evidence that the Eastlake manager was similarly situated is lacking. To be similarly situated, Fabiniak must show, among other things, that he and the comparator "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 777 (6th Cir. 2016) (citation omitted). Fabiniak has a record of disciplinary violations and repeated warnings on cleanliness. His comparator? Fabiniak has not shown a similar record of misdeeds. Accordingly, Fabiniak has not carried his burden of persuasion on pretext. *Cf. Papierz*, 2022 WL 154342, at *3 (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002)) ("[M]ere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.").

3. Fabiniak's remaining arguments regarding pretext were not pursued in the district court. As a result, they are forfeited, and we decline to address them. *See Knall Bev., Inc. v. Teamsters Loc. Union No. 293 Pension Plan*, 744 F.3d 419, 424 (6th Cir. 2014).

We affirm the judgment of the district court.